IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Rolls-Royce Energy Systems, :
Inc.,
        Plaintiff,       :

   v.                                   :        Case No. 2:14-cv-160

                                     :        JUDGE MICHAEL H. WATSON
Turner Envirologic, Inc.,         Magistrate Judge Kemp

        Defendant.      :

OPINION AND ORDER

I.   Introduction

    Plaintiff Rolls-Royce Energy Systems, Inc., ("RRESI") a supplier and manufacturer of power generation equipment and services, filed this action against Turner Envirologic, Inc., a designer and manufacturer of selective catalytic reduction systems, described in the complaint as "air pollution control systems used in power plant operations."  According to the complaint, RRESI contracted with Turner to buy a specific Turner product which was to be coupled with certain RRESI power generating engines installed at power plants in Braintree, Massachusetts, and Bayonne, New Jersey.  The complaint alleges that the products were defective and did not perform as required, causing RRESI to spend money to repair them.  RRESI seeks $9.5 million in damages.

    On February 10, 2016, Turner filed a motion to compel discovery.  The motion arises out of RRESI's response to a document request served on September 24, 2015.  According to the motion, after RRESI made its initial response and Turner pointed out various deficiencies in that response, RRESI, while promising to take the issues raised by Turner under review, failed to make any further response or produce any more documents.  RRESI has

responded by stating that the motion to compel was filed precipitously before RRESI had a chance to respond to Turner's concerns and that it has been working diligently to produce additional documents.  RRESI also argues that it actually produced documents in response to a number of requests which, according to Turner, had simply gone unanswered, and it takes issue with several of the requests as being either outside the proper scope of discovery or as premature.

The reply focuses, first, on documents relating to another power plant ("Vineland"), which are among the documents which RRESI contends are not relevant.  It then discusses several requests which did prompt RRESI to produce documents.  Turner claims that there must be more responsive documents than those which were produced, and that since the requests concededly call for relevant information, RRESI should be ordered to produce the remaining responsive documents.  The Court will address these issues in turn.

## II.  The Vineland Documents

The Court's information about the Vineland project comes from the parties' briefs.  According to RRESI, this was "a completely separate project that was awarded to one of [Turner]'s competitors."  Doc. 37, at 10.  RRESI provides no additional information about the project, instead arguing that it would be unduly burdensome to produce documents about this project and that although the project did involve the failure of a CO (carbon monoxide) catalyst, "[o]ne other failure of an unrelated CO catalyst is no more relevant here than all of the other instances where the CO catalysts performed properly and as promised."  Id. at n.5.

Turner has supplied some additional information about the Vineland project.  Its reply brief, the contents of which have been verified by counsel, says that the engines used at Vineland

were the same as those supplied by RRESI at Bayonne.  It also indicates that the CO catalyst, although made by a different manufacturer than the two which supplied catalysts to Bayonne, failed and that the replacement catalyst "had 120% of the replaced catalyst, which is exactly what was done at Bayonne." Doc. 39, at 2.  Turner further states that "Vineland represents the only simple cycle RRESI Trent turbine installed with an SCR similar to those provided by [Turner] ...."  Id.  Turner argues, from these facts, that there could well have been an issue regarding "the high volume of exhaust emanating from the RRESI engines" and that the same problem could have caused the product failures at Bayonne.  Id. at 3.

   As is well known, discovery is permitted into any nonprivileged matter which is relevant to any party's claim or defense.  Fed.R.Civ.P. 26(b)(1).  Cost and burden are factors to be taken into account in determining whether to allow discovery which is otherwise relevant, but for them to be considered seriously by the Court, there must be some concrete indication of how much it would cost, or how long it would take, to provide the discovery in question.  See Anderson v. Dillard's, Inc., 251 F.R.D. 307, 310 (W.D. Tenn. 2008)("the party resisting discovery bears the burden of demonstrating why the request is unduly burdensome ...").  Since RRESI has not given the Court much guidance in that regard, the Court will determine the issue of discoverability based on the parties' respective arguments about relevance.

   On this issue, Turner has the better argument.  It is common that a court will allow a party to discover some amount of "evidence of substantially similar occurrences...."  United Oil Co. v. Parts Associates, 227 F.R.D. 404, 410 (D. Md. 2005).  In the employment law context, for example, information about "comparators" - other employees who worked for the same

-3-

supervisors or in the same division of the company as did the plaintiff - is typically discoverable. See, e.g., Martin v. Allstate Ins. Co., 292 F.R.D. 361 (N.D. Tex. 2013). The same rule holds for failures of a product in situations which may differ to some extent from that alleged in the complaint, so long as the information involves the same product and the various facets of its operation. See, e.g., Companhia Energetica Potiguar v. Caterpillar, Inc., 307 F.R.D. 620 (S.D. Fla. 2015). There, the court, emphasizing the liberal nature of the discovery rules (notwithstanding recent amendments which have curtailed the scope of discovery to some degree), noted that "discovery about other similar incidents is usually permissible," and allowed the requested discovery because "[t]his is not a case where a plaintiff seeks information about a completely different product." Id. at 628.

Here, the turbines at Vineland appear to be the same as those involved at Bayonne. The type of pollution control device installed on those turbines is, according to Turner, similar to the ones which Turner supplied, even though it came from a different manufacturer. Both failed, and the remedy for that failure is, according to Turner, identical. That is enough information for the Court to conclude that information about what happened at Vineland is relevant, for discovery purposes, to the claims in the complaint - and, as Turner points out, given the prayer for almost ten million dollars in damages, it is not unreasonable to require RRESI to expend some effort in producing potentially relevant information. Given this ruling, the Court expects that the parties can agree on how much evidence ought to be produced about the Vineland project, or can at least agree to get started on that path so that it can be more completely determined whether the issues are similar enough to justify more extensive document production.

### III. Other Issues

As noted above, the other matters in dispute do not involve any conceptual disagreements between the parties, but rather a disagreement about whether RRESI has produced all of the relevant documents. Without seeing the documents themselves, it is somewhat difficult for a court to determine whether there has been adequate compliance or not.

RRESI's response points out that, contrary to Turner's assertion, it did produce responsive documents in many of the categories at issue, and it provides references to those documents. The reply does not contest that point, but states that in a number of major areas, it seems likely that RRESI has additional documents which have not been produced. The specific areas identified in the reply are documents relating to (1) stack testing information, (2) analysis of the structural integrity of the SCRs, (3) the actual cost of the replacement catalysts, (4) contractually-required notices, and (5) internal correspondence about the matters at issue here. The Court agrees that all of these requests call for the production of relevant information. To the extent that RRESI has withheld production of documents which fall into these categories, it should produce them, but it seems more likely that the parties need to meet and discuss what has been produced, how RRESI searched for responsive documents, and, if there are obvious gaps in the production, how to solve that problem on a going-forward basis. Consequently, the Court will direct the parties to engage in such a discussion in lieu of an order compelling the production of additional documents which may or may not exist.

### IV. Order

For the reasons stated above, the motion to compel discovery (Doc. 36) is granted to the extent that the parties shall meet and confer about the issues discussed in this Opinion and Order

-5-

and that, within 28 days of that meeting, RRESI shall produce documents relating to the Vineland project and any other documents which are responsive to the remainder of Turner's document requests.

### V. Motion to Reconsider

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 14-01, pt. IV(C)(3)(a).  The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter.  The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect even if a motion for reconsideration has been filed unless it is stayed by either the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.3.


/s/ Terence P. Kemp
United States Magistrate Judge